J-A27039-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEITH ALEXANDER | : | |
| | : | |
| Appellant | : | No. 3246 EDA 2017 |

Appeal from the Judgment of Sentence Entered September 12, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005971-2016

BEFORE:  BOWES, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED MARCH 05, 2019**

Keith Alexander appeals the judgment of sentence entered on September 12, 2017, after the trial court found him guilty of knowing and intentional possession of a controlled substance ("K&I") and possession with intent to deliver a controlled substance ("PWID").[1] Alexander maintains that the police officers who conducted a traffic stop of his vehicle lacked probable cause to search his vehicle and a locked container they found in his vehicle. He also suggests that our Supreme Court's decision in *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014), should be overruled. We affirm.

The facts and procedural history giving rise to this appeal are as follows. The Commonwealth charged Alexander with a number of drug offenses including the above referenced offenses. The charges arose after Alexander

_____

[1] 35 P.S. §§ 780-113(a)(16), (30).

was arrested for driving under the influence of narcotics. While searching his vehicle, policer officers recovered ten bundles of heroin. Alexander filed a Motion to Suppress the narcotics recovered as well as any statement made by him, arguing that the police officers lacked reasonable suspicion and probable cause to "detain, stop, frisk, search, or question" him. N.T., Suppression Motion, 6/5/17 at 3.

The Commonwealth presented the following evidence at the Motion to Suppress hearing. Officer Joshua Godfrey testified that on the day in question, he was on duty with his partner Officer Catherine Ernst and around 2:30 a.m. he observed Alexander driving a vehicle. *Id.* at 3-4. There were no other vehicles on the road at the time. *Id.* at 6-7. While waiting at a red light, Officer Godfrey noticed an "extremely overpowering smell of burnt marijuana" coming from Alexander's vehicle, which was in front of him. *Id.* Officer Godfrey testified that the windows of his vehicle, as well as Alexander's windows, were down. He said he pulled next to Alexander's vehicle after the light turned green. *Id.* at 7, 14. Officer Godfrey continued to follow Alexander for approximately nine blocks, during which time he continued to smell marijuana. *Id.* at 8. The only vehicles on the road the entire time were Officer Godfrey's and Alexander's. *Id.* Officer Godfrey then conducted a traffic stop of Alexander's vehicle. *Id.* Officer Godfrey got out of his vehicle and approached Alexander, who was in the driver's seat. There was also a woman in the front passenger seat. *Id.* at 8, 11. He testified that when he approached the vehicle, the smell of marijuana became stronger. *Id.* He also observed

- 2 -

that Alexander's eyes were bloodshot, and Alexander spoke slowly and in "a hush, little whisper." *Id.* at 8-9. Officer Godfrey asked Alexander if there was marijuana in the vehicle and Alexander gave him one baggie of marijuana that he pulled from his crotch. *Id.* at 10. Alexander also admitted "he had just smoked–he and his passenger just smoked a blunt." *Id.* at 10.

Officer Godfrey then placed Alexander under arrest for suspicion of driving under the influence of narcotics. *Id.* at 11. Officer Godfrey testified that based on his one and one half years' experience as a police officer; his personal experience of being a manager of nightclubs in Atlantic City; encountering individuals under the influence of marijuana at least 50 times in his life; Alexander's speech; the overpowering smell of marijuana; Alexander's admission that he had just smoked a "blunt" in the vehicle; as well as the marijuana that he handed over, Officer Godfrey believed that Alexander was under the influence of marijuana and unfit to drive. *Id.* at 9-10. After arresting Alexander, Officer Godfrey found a locked silver box behind the driver's seat. *Id.* at 12. The key for the lockbox was in Alexander's pocket and Officer Godfrey took the key and unlocked it. *Id.* at 12-13. Officer Godfrey recovered a total of ten bundles of heroin, packaged in paper packages stamped "Buddha," from inside the lockbox. *Id.* at 11-12.

The trial court denied the motion and Alexander waived his right to a jury trial and proceeded with a bench trial the same day. *Id.* at 30. The trial court found him guilty of PWID and K&I. It sentenced him on a later date. This timely appeal followed.

Alexander raises the following issues:

I.      Did not the lower court err in denying [Alexander's] motion to suppress evidence recovered from a locked metal safe, where officers took a key from [Alexander's] pocket and opened the lockbox but lacked probable cause to search the vehicle and a warrant to search the lockbox?

II.     Should not **Commonwealth v. Gary**, 91 A.3d 102 (Pa. 2014), be overruled as an anomaly inconsistent with the fundamental principles of Article I, Section 8 of the Pennsylvania Constitution and other cases of the Pennsylvania Supreme Court?

Alexander's Br. at 3.

Our standard of review of the denial of a motion to suppress is "limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Jones**, 121 A.3d 524, 526 (Pa.Super. 2015) (citation omitted).

Alexander admits that "[t]he odor of burnt marijuana and [his] admission that he had just smoked 'a blunt' gave Officer Godfrey probable cause to arrest [him] for DUI." Alexander's Br. at 12. However, he maintains that Officer Godfrey did not have probable cause to search the lockbox because "there were no additional facts or circumstances articulated by Officer Godfrey to justify a reasonable belief that more marijuana would be found in a locked lockbox, an area where a driver would have a greater expectation of privacy." **Id.** In support of his argument he cites **Commonwealth v. Long**, 414 A.2d 113 (Pa. 1980), which held that a warrantless search of the trunk of

an automobile was unreasonable where officers lacked probable cause to search the vehicle. *Long*, 414 A.2d at 117. Alexander argues that "[a] locked lockbox is similar to a locked trunk." Alexander's Br. at 12. We disagree.

"As a general rule, for a search to be reasonable under the Fourth Amendment [of the United States Constitution] or Article I, Section 8 [of the Pennsylvania Constitution], police must obtain a warrant, supported by probable cause and issued by an independent judicial officer, prior to conducting the search." *Gary*, 91 A.3d at 107. An exception to this general rule is the search and seizure of vehicles. *Id.* Pennsylvania constitutional law governing warrantless searches of motor vehicles is coextensive with federal law under the Fourth Amendment. *Id.* at 138. A warrantless search of a vehicle is appropriate where officers have probable cause to search. *Id.* "No exigency beyond the inherent mobility of a motor vehicle is required." *Id.* Once an officer has probable cause to search a motor vehicle, the search of that vehicle includes everything inside that the officer believes may contain the contraband giving rise to the search. *See Wyoming v. Houghton*, 526 U.S. 295, 307 (1999) ("[S]uch a package may be searched, whether or not its owner is present as a passenger or otherwise, because it may contain the contraband that the officer has reason to believe is in the car."); *see also In re I.M.S.*, 124 A.3d 311, 317 (Pa.Super. 2015) (stating rule of *Houghton* applies in light of the holding in *Gary*).

As stated above, Alexander acknowledges that Officer Godfrey had probable cause to search his vehicle due to the heavy smell of marijuana,

which is correct. **See In Interest of A.A.**, 195 A.3d 896, 904 (Pa. 2018) ("the odor of marijuana alone, particularly in a moving vehicle, is sufficient to support at least reasonable suspicion, if not the more stringent requirement of probable cause"); **see also Commonwealth v. Stoner**, 344 A.2d 633, 635 (Pa.Super. 1975) (analogizing plain smell of marijuana with plain view of marijuana). However, he maintains that we should treat the lockbox like a locked trunk, for which we have in some cases required police to obtain a warrant before conducting a search. **See Long**, 414 A.2d at 116-17 (concluding search of a locked automobile trunk was unreasonable where officers lacked probable cause to search the vehicle); **see also Commonwealth v. Pleummer**, 617 A.2d 718, 719 (Pa.Super. 1992).

Alexander's reliance on **Long** and **Pleummer** is misplaced. Those decisions predate **Gary**, which adopted federal precedent governing automobile searches, including the automobile exception, and here there was probable cause to search Alexander's vehicle. As such, Officer Godfrey was free to search any container within the vehicle that he reasonably believed could contain the contraband that gave rise to the arrest. **See Commonwealth v. Runyan**, 160 A.3d 831, 837 (Pa.Super. 2017) (concluding officer had probable to search vehicle and therefore was permitted to search any container found in vehicle where contraband could be found). Additionally, the fact that the lockbox was locked is immaterial because prior to opening it, Officer Godfrey had probable cause to search the vehicle. **See Houghton**, 526 U.S. at 307. No relief is due.

Next, Alexander argues that **Gary** should be overruled. He acknowledges that "this Court cannot overrule a holding of the Pennsylvania Supreme Court," and apparently makes this claim only to preserve the argument for further review. Alexander's Br. at 20. We thus affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/5/19